# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| QUEBEC STEVEDORING COMPANY Ltd. ) <br> d/b/a/ ST. LAWRENCE STEVEDORING, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GREAT LAKES SALT, INC., ) <br> ) <br> Defendant. ) | Case No. <br><br><br><br><br> District Judge: <br><br> Magistrate Judge: |

## VERIFIED COMPLAINT

Plaintiff, Quebec Stevedoring Company, Ltd. d/b/a St. Lawrence Stevedoring ("<u>SLS</u>"), by and through his attorneys, Seyfarth Shaw LLP, for its Verified Complaint in Admiralty against Defendant Great Lakes Salt, Inc. ("<u>Great Lakes</u>") alleges and states as follows:

## NATURE OF CASE

1.   In this Admiralty action, SLS seeks damages based on: (a) Great Lakes' breach of contract or, alternatively, (b) quantum meruit; or, alternatively, (c) unjust enrichment.

2.   Between October 30, 2104 and November 20, 2014, SLS performed stevedoring services upon the request and for the benefit of Great Lakes resulting in charges in the amount of at least $1,370,618.42.  To date, Great Lakes has failed to pay all obligations due and owing to SLS related to these stevedoring services.

## PARTIES

3.   Quebec Stevedoring Company, Ltd. is a Canadian limited company doing business as St. Lawrence Stevedoring with its principal place of business at 961 Boulevard Champlain, Quebec City, Qc Canada 61k 4J9.   SLS is a citizen of Quebec, Canada for purposes of establishing diversity jurisdiction in accordance with 28 U.S.C. § 1332.

4. Great Lakes is an Illinois corporation with its principal place of business, upon information and belief, at 1457 N. Artesian Ave., Chicago, Il 60622. Great Lakes is a citizen of the State of Illinois for purposes of establishing diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1333, as this is a admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil procedure in that it involves a maritime activity.

6. In the alternative, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over Great Lakes, and venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Great Lakes does business in and has its principal place of business within this District.

## FACTS

8. In September 2014, McQuilling Partners Latem ("McQuilling"), a chartering service, as agent of and on behalf of a salt mine and/or vendor located in Mexico contacted SLS to inquire regarding stevedoring services related to two incoming ocean vessels by transferring salt from the ocean vessels to smaller vessels which were able to travel the St. Lawrence Seaway to the Port of Chicago, Illinois. In response, SLS provided a proposal for the stevedoring services requested.

9. On September 10, 2014, Jean Magot of McQuilling, as agent of and on behalf of Great Lakes, informed SLS by email that Great Lakes accepted SLS's terms and rates for the stevedoring services requested by Great Lakes. Matt McCullough ("McCullough"), Vice President of Great Lakes, was copied on the email.

10. Thereafter and in September 2014, Gibson Canadian & Global ("Gibson") a chartering service, as agent of and on behalf of Great Lakes, contacted SLS and indicated that it was advising Great Lakes with respect to marine activities and with respect to the stevedoring services SLS would be providing for Great Lakes. Gibson acted as the advisor and authorized agent of Great Lakes in connection with procuring and further negotiating the stevedoring services of SLS.

11. Gibson impressed that time was of the essence in providing the stevedoring services because Great Lakes wanted the ships to arrive in the Port of Chicago before the St. Lawrence Seaway froze for the winter. Because of the harsh winter in the Midwest during the 2013-2014 season, there was no salt available in North America Great Lakes. Therefore, Great Lakes was causing the salt to be delivered to Chicago where Great Lakes anticipated it could be sold for immediate use in the 2014-2015 winter season at high prices (given the price at which salt was selling during the fall and early 2014-2015 winter season).

12. Gibson, on behalf of Great Lakes, requested that SLS reduce the handling rate and on September 29, 2014, SLS sent a revised proposal to Great Lakes in care of Gibson for the stevedoring services which Great Lakes requested (the "Contract") with a reduced handling rate. A copy of the Contract is attached hereto as **Exhibit A**.

13. The Contract provides that the rates, terms and conditions therein are deemed accepted upon commencement of the stevedoring services. *See* Contract, at ¶ 14.

14. The Contract further provides that Great Lakes will "wire transfer payment within 15 days from the date the invoice is issued or before the loading of the first laker vessel, whichever comes first." *See* Contract, at ¶ 7.III.

15. Great Lakes accepted the rates, terms and conditions of the Contract.

16. On October 15, 2014, SLS began unloading salt from an ocean vessel named Nord Barcelona.

17. In October 17, 2014, after SLS had completed unloading the Nord Barcelona, Great Lakes, by and through Steve Bednarz ("Bednarz"), its Vice President of Operations, visited the terminal with SLS's product manager, Jean Louis Perez, to check on the status of SLS's stevedoring operations. During the visit, Bednarz expressed that he was pleased with the status of the stevedoring operations.

18. On October 27, 2014, SLS issued an invoice to Great Lakes in the amount of $661,627.29 on account of the stevedoring services performed by SLS for Great Lakes related to unloading the Nord Barcelona ("NB Unloading Invoice").

19. On October 30 and 31, 2014 and on November 2 to 7, 2014, SLS performed stevedoring services for Great Lakes by loading the salt unloaded from the Nord Barcelona onto two smaller vessels, Captain Henry Jackman and Sedna Desgagnes. On October 31, 2014 and on November 13, 2014, SLS issued two invoices to Great Lakes in the aggregate amount of $154,823.30 ("NB Loading Invoices").

20. Beginning on November 14, 2014, SLS performed more stevedoring services for Great Lakes by unloading salt from an ocean vessel named Issara Naree onto four other vessels which could navigate the St. Lawrence Seaway into the Port of Chicago.

21. On November 17, 2014, Great Lakes made payment to SLS in the amount of $661,627.29 on account of the NB Unloading Invoice.

22. Beginning on November 20, 2014, SLS issued invoices in the aggregate amount of $1,215,795.12 to Great Lakes for the additional stevedoring services provided in connection with the salt which arrived on the Issara Naree ("Issara Naree Invoices," and together with the NB Loading Invoices, the "Unpaid Invoices"). The Unpaid Invoices are in the aggregate amount of $1,370,618.42 and each is attached hereto as **Exhibit B**.

23. After serving Great Lakes with the Unpaid Invoices, SLS made multiple demands on Great Lakes for payment of the Unpaid Invoices including, multiple emails and telephone calls to McCullough.

24. To date, Great Lakes has failed to pay the Unpaid Invoices, and there remains due and owing by Great Lakes to SLS an amount of at least $1,370,618.42, plus accrued interest (the Contract provides that unpaid invoices are subject to an interest rate of 1.25% per month. *See* Contract at ¶ 7.IV.)

## COUNT I
**(Breach of Contract against Great Lakes)**

25. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

26. The Contract is a valid and enforceable contract.

27. The Contract provides that the rates, terms and conditions therein are deemed accepted upon commencement of the stevedoring services. *See* Contract, at ¶ 14.

28. Great Lakes breached the Contract by failing to pay SLS the amount due and owing to SLS by Great Lakes as reflected by the Unpaid Invoices.

29. SLS performed all obligations required under the Contract.

30. As a direct and proximate result of Great Lakes' breach, SLS has suffered damages in the amount of $1,370,618.42, plus interest.

WHEREFORE, the Plaintiff, SLS, prays for judgment against Defendant Great Lakes for an amount to be established at trial but at least in the amount of the Unpaid Invoices ($1,370,618.42), together with pre- and post-judgment interest as provided for by law.

## COUNT II
### (Quantum Meruit against Great Lakes in the alternative)

31. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

32. If for any reason the trier-of-fact in this case fails to find the existence of an enforceable and binding contract between SLS and Great Lakes, SLS pleads quantum meruit in the alternative.

33. SLS rendered valuable stevedoring services for the benefit of Great Lakes.

34. SLS did not perform the stevedoring services gratuitously and had a reasonable expectation of being compensated for its services.

35. Great Lakes was aware that SLS expected to be compensated for the stevedoring services SLS performed.

36. Great Lakes accepted, benefited from, and unjustly retained the benefit from SLS's stevedoring services.

37. Great Lakes was fully aware of the benefit it received at SLS's expense and impoverishment.

38. It would be unjust to permit Great Lakes to receive these services without rendering payment to SLS.

WHEREFORE, the Plaintiff, SLS, prays for judgment against Defendant Great Lakes for the reasonable value of services provided by SLS to Great Lakes, which SLS submits is in the amount of at least $1,370,618.42, together with pre- and post-judgment interest as provided for by law.

## COUNT III
**(Unjust Enrichment against Great Lakes in the alternative)**

39. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 24 as though fully set forth herein.

40. If for any reason the trier-of-fact in this case fails to identify the existence of an enforceable and binding contract between SLS and Great Lakes, SLS pleads unjust enrichment in the alternative.

41. SLS rendered valuable stevedoring services for the benefit of Great Lakes and had a reasonable expectation of being compensated for their services.

42. SLS did not perform the stevedoring services gratuitously and was impoverished as a result of the stevedoring services performed.

43. Great Lakes accepted, benefited from, and unjustly retained the benefit from SLS's stevedoring services.

44. Great Lakes was fully aware of the benefit it received at SLS's expense and impoverishment.

45. There is no justification for the enrichment received by Great Lakes and the impoverishment suffered by SLS.

46. It would be unjust to permit Great Lakes to receive these services without rendering payment to SLS.

WHEREFORE, the Plaintiff, SLS, prays for judgment against Defendant Great Lakes in an amount equal to the benefit conferred upon Great Lakes, which SLS submits is in the amount of at least $1,370,618.42, together with pre- and post-judgment interest as provided for by law.

DATED: March 25, 2015

Respectfully submitted,

QUEBEC STEVEDORING COMPANY Ltd. d/b/a/ ST. LAWRENCE STEVEDORING

By /s/ Christopher J. Harney
One of Its Attorneys

Jerome F. Buch (6182673)
Bradford L. Livingston (3124580)
Christopher J. Harney (6296683)
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603-5577
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

## **VERIFICATION**

Geoff Lemont, being duly sworn, deposes and says:

1. I am the Vice President of Quebec Stevedoring Company, Ltd. d/b/a St. Lawrence Stevedoring ("SLS") and have been employed at SLS since Quebec Stevedoring Company, Ltd. purchased the assets of St. Lawrence Stevedoring in November 1, 1991 and thereafter began operating under the trade name of St. Lawrence Stevedoring. Prior to the aforementioned purchase, I was employed by St. Lawrence Stevedoring since 1961. I am authorized and do submit this verification in support of SLS's Complaint.

2. I have read the complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief based upon my own personal knowledge as well as information I have received from other employees of SLS, persons and documents.

3. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and accurate.

_____
Geoff Lemont
Vice President,
Quebec Stevedoring Company, Ltd. d/b/a St.
 Lawrence Stevedoring.

SUBSCRIBED and SWORN before me
this 25th day of March, 2015.

_____
Commissioner for Oaths

A. BOISSONNEAULT
# 194886